Glenda BROWN, Sam BROWN, Tawana Brown ETUE,
Teresa BROWN and Troy BROWN, Surviving Spouse and
Next of Kin of Roy Dewayne BROWN, Deceased *v.* ST.
PAUL MERCURY INSURANCE CO.

87-38                                    732 S.W.2d 130

Supreme Court of Arkansas
Opinion delivered July 6, 1987

*Hani W. Hashem*, for appellant.·

*Bridges, Young, Matthews, Holmes & Drake*, for appellee.

JACK HOLT, JR., Chief Justice. Roy Dewayne Brown was a patient at the White House Alcoholism Treatment Center when he walked out of an unlocked door onto the roof of the building and either fell or jumped to his death on April 11, 1983. Nearly three years later, his surviving spouse and other next of kin, appellants, filed suit against the center's insurer, St. Paul Mercury Insurance Co., appellee. The trial court found that Brown's death was a "medical injury" subject to the two-year statute of limitations in Ark. Stat. Ann. § 34-2616 (Supp. 1985), and granted appellee's motion for summary judgment. We hold that the complaint was timely filed as an action for wrongful death, which carries a three-year statute of limitations. Ark. Stat. Ann. § 27-907 (Supp. 1985). Accordingly, we reverse and remand.

The trial court concluded that the two-year limitation for actions for medical injury barred the appellants' claim, based on the definition of medical injury in Ark. Stat. Ann. § 34-2613(C) (Supp. 1985), which provides in pertinent part that medical injury "means any adverse consequences arising out of or sustained in the course of the professional services being rendered by a medical care provider, whether resulting from negligence, error or omission in the performance of such services, . . ."

The appellants argue that Brown's death was not the result of a medical injury, but was caused by the treatment center's failure to keep the premises safe for a patient in Brown's condition. In addition, the appellants contend that even if Brown's death was the result of a medical injury as defined in our statute, the cause of action by his survivors should be classified as

a wrongful death action with its accompanying three-year limitation. We find that Brown's death was a medical injury, agreeing however, that his survivors are given the benefit of the three-year statute of limitations under our wrongful death statutes.

■ Appellants' claim that Brown's death was not the result of a "medical injury" does not square with this court's position in *Sexton* v. *St. Paul Fire & Marine Ins. Co.*, 275 Ark. 361, 631 S.W.2d 270 (1982). In that case, an 81-year-old, mentally confused patient fell at a hospital, and died several months later from the injuries he sustained in the fall. His survivors alleged that a nurse at the hospital was negligent in not restraining the patient with a Posey vest, which had been authorized by the patient's doctor. We found that the action was for medical injuries arising out of the professional services provided by the hospital, and held:

> A hospital is required to consider the patient's capacity to care for himself and to protect the patient from dangers created by his weakened condition. Providing a safe environment for patients is within the scope of the professional services by a hospital. *Murillo* v. *Good Samaritan Hospital of Anaheim*, 99 Cal. App. 3d 50, 160 Cal. Rptr. 33 (1979).

■ In the case before us, Brown's death was alleged to be the result of negligence on the part of the treatment center in failing to properly supervise and restrain the activities of the deceased, and in failing to provide a safe place for treatment of Brown, who was known to be suffering from delirium tremens and mental disturbances associated with alcoholism. Certainly it was within the scope of the hospital's professional services to provide a safe environment for this patient under the circumstances, and failure to do so gives rise to a medical injury under § 34-2616(C).

Even though Brown's death is properly characterized as a medical injury, we find that appellants' claim is founded on our wrongful death statutes and that its three-year statute of limitation applies. Ark. Stat. Ann. §§ 27-906, 27-907. In addressing this issue, both parties cite out-of-state decisions in support of their relative positions as to whether the wrongful death statutes create a new and separate cause of action which carries its own statute of limitations.

Although these cases are instructive, we stand fast on our ruling in *Matthews* v. *Travelers Indemnity Ins. Co.*, 245 Ark. 247, 432 S.W.2d 485 (1968), where we held that the wrongful death statute and its specific limitations should apply.

In *Matthews*, tumorous tissue removed from Mrs. Matthews was wrongly diagnosed as noncancerous. When Mrs. Matthews' condition worsened, her doctor ordered a re-examination of the tissue and it was discovered she had a malignancy. More than two years after the allegedly negligent diagnosis, but less than three years after Mrs. Matthews' death, Mr. Matthews, as administrator of his wife's estate, brought an action against the testing laboratory's insurer. The complaint sought compensation for the physical and mental anguish suffered by Mrs. Matthews before her death, and for Mr. Matthews' loss of consortium and mental anguish. The trial court dismissed the entire action, applying the two-year statute of limitations then governing medical malpractice, which provided that the date of the accrual of the cause of action shall be "the date of the wrongful act complained of, and no other time." Ark. Stat. Ann. § 37-205 (Repl. 1962). Matthews argued that the three-year wrongful death statute should have been applied. We said:

> In our opinion each statute is partly controlling. It is essential to recognize that two separate causes of action are being asserted by the appellant in his capacity as administrator of his deceased wife's estate. The complaint seeks in part to recover compensation for the physical and mental anguish suffered by Mrs. Matthews before her death. At common law that cause of action would not have survived the death of Mrs. Matthews, but under our survival statute it may be asserted by her personal representative. Ark. Stat. Ann. § 27-901. In that situation the personal representative is asserting the decedent's cause of action and must therefore bring suit within the period allowed by that statute of limitations which would have governed if the injured person had not died. *Smith* v. *Missouri Pac. R.R.*, 175 Ark. 626, 1 S.W.2d 48 (1927). That being the two-year malpractice act in this case, the administrator's attempt to assert Mrs. Matthews's cause of action for her physical and mental pain and suffering is barred, because the suit was not filed within two years after the wrongful

act complained of.

An administrator is also entitled to assert the cause of action for wrongful death that was created by statutes modeled after Lord Campbell's Act. Our statute, with respect to the case at bar, creates a cause of action in the surviving spouse for his loss of consortium and for his mental anguish. Ark. Stat. Ann. § 27-909. That cause of action may be asserted, as we have indicated, within three years after the death of the person alleged to have been wrongfully killed. Here the administrator's suit upon that cause of action was timely.

We are not overlooking the argument that the administrator's action for wrongful death is to some extent derivative, in that it may be extinguished either by a suit for personal injuries prosecuted by the injured person to a final judgment during his lifetime, Restatement, Judgments, § 92 (1942), or by the running of the applicable statute of limitations during the injured person's lifetime. *Hicks* v. *Missouri Pac. R.R.*, 181 F. Supp. 648 (W.D. Ark. 1960), app. dism. 285 Fed. 2d 427 (1960). Here, however, the two-year malpractice statute had not run when Mrs. Matthews died on November 28, 1965. We are accordingly of the opinion that the administrator was entitled to assert the cause of action for wrongful death at any time within three years after Mrs. Matthews's death. Where the issue is doubtful our policy is to favor the longer of two statutes of limitation. *Jefferson* v. *Nero*, 225 Ark. 302, 280 S.W.2d 884 (1955).

██ Granted, in *Matthews, supra*, we were viewing the old medical malpractice statute in light of our wrongful death statutes. However, when applied to § 34-2616(C), the result is the same. Our wrongful death statute created a new and separate cause of action which could arise if death was caused by any wrongful act and which carries its own statute of limitations as part of that right. For this reason, the medical malpractice statute of limitations is irrelevant when a patient dies from his injuries before the two-year period has run.

██ In their complaint, the appellants alleged damages for loss of consortium, mental anguish, and funeral expenses caused

by the wrongful death of the deceased. Because these allegations fall within our statutorily created cause of action for wrongful death, coupled with our policy of favoring the longer statute of limitations when the issue is doubtful, *Matthews, supra*, we hold that the appellants' complaint was timely filed.

Reversed and remanded.

HICKMAN, PURTLE, and GLAZE, JJ., concur.

JOHN I. PURTLE, Justice, concurring. I concur with the result reached in the majority opinion. However, let the record reflect that I do not agree that the injury in this case was a medical malpractice injury. The injury and death were no more a consequence arising out of professional service than they would have been if the doctor had driven up to the institution and injured the patient by running over him with his automobile. Clearly, the cause of action in the present case did not arise during the "course of professional services."

HICKMAN, J., joins.

TOM GLAZE, Justice, concurring. I join the majority in its reversal of this cause, but I must disagree with the majority holding that Brown's death was the result of a "medical injury." The evidence here simply does not support such a holding. Some of my reasons for disagreeing with the majority on this point are already stated in the dissenting opinion found in *Sexton v. St. Paul Fire & Marine Insurance Co.*, 275 Ark. 361, 364, 631 S.W.2d 270, 272 (1982). Therefore, I merely adopt the dissenting views expressed in *Sexton* as supporting my concurrence in this case.

HICKMAN, J., joins in this concurrence.