

# SUPREME COURT OF ARKANSAS

No. CV–13–210

|  |  |
|---|---|
| SEARCY HEALTHCARE CENTER, LLC D/B/A SEARCY HEALTHCARE CENTER; SEARCY HC HOLDINGS, LLC; PERENNIAL BUSINESS SERVICES, LLC; PERENNIAL CONSULTING SERVICES, LLC; PERENNIAL LEASING, LLC; SHC PROPERTIES, LLC; V. JAMES SANTARSIERO, INDIVIDUALLY, AND AS THE GOVERNING BODY OF SEARCY HEALTHCARE CENTER; JEANNE BUTTERWORTH, INDIVIDUALLY, AND AS THE GOVERNING BODY OF SEARCY HEALTHCARE CENTER; AND PAMELA MURPHY, IN HER CAPACITY AS ADMINISTRATOR OF SEARCY HEALTHCARE CENTER<br><br>APPELLANTS<br><br>V.<br><br>JOHN MURPHY, AS ADMINISTRATOR OF THE ESTATE OF JOHN WESLEY MURPHY, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF JOHN WESLEY MURPHY<br><br>APPELLEE | **Opinion Delivered** November 14, 2013<br><br>APPEAL FROM THE WHITE COUNTY CIRCUIT COURT [NO. CV-2011-13]<br><br>HONORABLE THOMAS M. HUGHES, JUDGE<br><br><u>REVERSED AND REMANDED; CROSS-APPEAL DISMISSED</u>. |

**KAREN R. BAKER, Associate Justice**

Searcy Healthcare Center, LLC d/b/a Searcy Healthcare Center, Searcy HC Holdings,

LLC, Perennial Business Services, LLC, Perennial Consulting Services, LLC, Perennial Leasing, LLC, SHC Properties, LLC, V. James Santarsiero, individually, and as governing body of Searcy Healthcare Center, Jeanne Butterworth, individually, and as governing body of Searcy Healthcare Center, and Pamela Murphy, in her capacity as administrator of Searcy Healthcare Center ("SHC"), appeal from the decision of the White County circuit court denying SHC's motion to compel arbitration. We reverse and remand.

John Wesley Murphy was a resident of SHC from January 7, 2010, until January 29, 2010. He died on February 12, 2010.

On January 8, 2010, John Wesley Murphy executed a written arbitration agreement with SHC. The arbitration agreement was not a requirement for John Wesley Murphy to become a resident at SHC, and testimony showed that John Wesley Murphy had thirty days from the time of his signature to revoke the agreement. The agreement stated as follows:

> Any controversy, claim, or dispute ("claim") between the parties arising under the Admissions Agreement, breaches of the Admissions Agreement, the care the Resident received or does not receive, or in any way arising out of or relating to the Resident's stay at SEARCY HEALTHCARE CENTER, LLC shall be settled by arbitration.

The agreement also stated that it was binding on the Resident, the Resident's representative, and SHC, as well as the resident's "spouse, children, heirs, personal representatives, assigns, guardians, persons appointed pursuant to a power of attorney, and administrators of the Resident's estate."

On January 11, 2011, John Murphy (Murphy) filed a nursing-home-malpractice action against SHC, as administrator of John Wesley Murphy's estate and on behalf of the statutory wrongful-death beneficiaries. SHC filed a motion to stay proceedings and compel arbitration



based on the arbitration agreement John Wesley Murphy had signed.

On November 9, 2011, the circuit court held a hearing over the motion to compel arbitration. After the hearing, the circuit court entered a written order denying the motion to compel arbitration as to the wrongful-death beneficiaries. The circuit court found that John Wesley Murphy was competent when he signed the agreement, that it was not unconscionable, and that the Federal Arbitration Act controlled the agreement. However, the circuit court found that John Wesley Murphy had not extinguished the substantive rights of the wrongful-death beneficiaries by signing the arbitration agreement. The circuit court therefore denied the motion to compel arbitration against the wrongful-death beneficiaries.

On appeal, SHC asserts that the circuit court erred in finding that the wrongful-death beneficiaries were not required to arbitrate their claims. Murphy cross-appeals, arguing that the circuit court erred in finding that: (1) the Federal Arbitration Act governed the agreement, and (2) John Wesley Murphy was competent to agree to arbitration.

An order denying a motion to compel arbitration is an immediately appealable order under Arkansas Rule of Appellate Procedure–Civil 2(a)(12) (2013). We review a circuit court's order denying a motion to compel arbitration de novo on the record. *HPD, LLC v. Tetra Techs., Inc.*, 2012 Ark. 408, ___ S.W.3d ___.

On appeal, SHC contends that the circuit court erred in denying the motion to compel arbitration as to the wrongful-death beneficiaries. SHC contends that, because a wrongful-death claim is derivative to the injury claim that the decedent could have brought had he survived, the wrongful-death beneficiaries are bound by the arbitration agreement.

SLIP OPINION

SHC asserts that John Wesley Murphy contracted away his right to a jury trial by signing the arbitration agreement and that the wrongful-death beneficiaries stand in his legal shoes. Murphy argues that while the wrongful-death claim is derivative of the survivorship claim, they remain two separate claims with separate plaintiffs and separate rights, and therefore John Wesley Murphy could not have contracted away the rights of those who were not party to the arbitration agreement.

The Arkansas wrongful-death statute states as follows:

> Whenever the death of a person . . . is caused by a wrongful act, neglect, or default and the act, neglect, or default would have entitled the party injured to maintain an action and recover damages in respect thereof if death had not ensued, then and in every such case, the person or company or corporation that would have been liable if death had not ensued shall be liable to an action for damages.

Arkansas Code Annotated section 16-62-102(a)(1) (Supp. 2013). The wrongful-death action is a statutory creation, and since it is in derogation of or at variance with the common law, we construe it strictly. *Estate of Hull v. Union Pac. R.R. Co.*, 355 Ark. 547, 141 S.W.3d 356 (2004). Strict construction requires that nothing be taken as intended that is not clearly expressed. *Id*.

A wrongful-death claim is derivative of the claim that the decedent would have had, had he survived. *See Hull, supra*. The right of the next of kin to recover under the Arkansas death statute is not a mere continuation of the original right of the decedent; it is a new action in the sense that it arises at a different time, the beneficiaries are different, and the measure of damages is different. *Id*. However, it is still a derivative action, and arises only where the original right of the decedent has been preserved. *Id*.

SLIP OPINION

In *Hull*, we cited comment b of section 46 of the Restatement (Second) of Judgments (1982) to explain the difference between derivative and independent claims for wrongful death. That comment states, in part, as follows:

> If the claim for wrongful death is treated as wholly derivative, the beneficiaries of the death action can only sue if the decedent would still be in a position to sue. In this approach, the decedent's action for personal injuries during his lifetime has the same consequences as it does under the survival statute. Accordingly, settlement of the decedent's personal injury claims or its reduction to judgment for or against the alleged tortfeasor extinguishes the wrongful death claim against the tortfeasor. Similarly, issue preclusion applicable against the decedent is applicable also against the claimant in the wrongful death action.

In other words, because the wrongful-death claim is derivative, the wrongful-death beneficiaries have the same limitations as the decedent would if the decedent brought the claim, and are bound by the agreements entered into by the decedent involving the decedent's claims. In *Hull*, we held that the settlement agreement of the decedent for his injuries bound the wrongful-death beneficiaries, and they were precluded from bringing a claim. Similarly, in *Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 199 S.W.3d 45 (2004), we held that wrongful-death beneficiaries were barred from bringing a claim where the action for the injuries of the decedent had been twice dismissed, the second time with prejudice.

Murphy argues that there is a difference between a settlement agreement and an arbitration agreement, in that the arbitration agreement does not prohibit the wrongful-death beneficiary from bringing a claim. This is a distinction without a difference. The FAA places arbitration agreements on equal footing with other contracts, and requires courts to enforce them according to their terms. *HPD, supra.* By holding as Murphy argues, we would be treating an arbitration agreement differently than we do other contracts, as other contracts

SLIP OPINION

signed by the decedent are binding on wrongful-death beneficiaries. We would also be assigning more rights to the wrongful-death beneficiaries than we would to the decedent, in a derivative action, as the decedent would not be able to avoid arbitration.

Murphy asserts that this court may affirm the circuit court's order because the arbitration agreement is not binding against all named defendants. This court may affirm an order of a circuit court if it reached the right result, even if it is for the wrong reason. *See Courtyard Gardens Health and Rehabilitation, LLC v. Quarles*, 2013 Ark. 228, ___ S.W.3d ___. However, here, we cannot say that the circuit court's order reached the right result. The arbitration agreement plainly provides that it is binding upon the "employees, managers, officers, directors, parent company, subsidiaries, and successors in interest" of Searcy Healthcare, LLC. We enforce arbitration agreements according to their terms. *HPD*, *supra*. Though Murphy argues that SHC has not brought forward evidence to show that all defendants are parties to the arbitration agreement, Murphy specifically stated in his complaint that the basis for claims against each of the defendants was their participation and control over the operation and business of Searcy Healthcare, LLC. Doubts about arbitrability must be resolved in favor of arbitration. *Id*.

Because the circuit court erred as a matter of law in finding that the wrongful-death beneficiaries were not bound by the arbitration agreement executed by the decedent, we reverse and remand.

On cross-appeal, Murphy argues that the circuit court erred in finding that the Federal Arbitration Act governed the agreement and that John Wesley Murphy was competent to

agree to arbitration. SHC filed a motion to dismiss the cross-appeal, citing two grounds: (1) that Murphy did not have standing to bring a cross-appeal as the prevailing party below; and (2) that Murphy attempts to appeal an interlocutory order enforcing the arbitration agreement, which is not subject to immediate appeal. We hold that the issues that Murphy brings before us on cross-appeal are not cognizable in the limited, interlocutory appeal of the denial of a motion to compel arbitration. Accordingly, they are not ripe for appeal.

Murphy alleges that the circuit court erred in finding that the FAA governed the agreement and that John Wesley Murphy was competent to sign the arbitration agreement. Both of the errors alleged by Murphy attack the validity of the arbitration agreement and ask us to hold the agreement as a whole invalid. These arguments have no place in the appeal of an order denying a motion to compel arbitration. They are more suited for the appeal of an order granting a motion to compel arbitration.

Pursuant to the Uniform Arbitration Act, an appeal may be taken from an order denying an motion to compel arbitration or an order granting a motion to stay arbitration. See Arkansas Code Annotated section 16-108-228 (Supp. 2013). However, an order compelling arbitration is not appealable. *England v. Dean Witter Reynolds, Inc.*, 306 Ark. 225, 811 S.W.2d 313 (1991). Since we do not allow interlocutory appeals of orders granting motions to compel arbitration, the issues presented here are not ripe for appeal. Therefore, we dismiss the cross-appeal.

Reversed and remanded; cross-appeal dismissed.

HANNAH, C.J., and DANIELSON, J., concur.

7

**JIM HANNAH, Chief Justice, concurring.** Based on the doctrine of stare decisis, I concur in the decision reached by the majority. However, I again state my belief that this court errs in holding that a wrongful-death action is derivative of the decedent's action. We should correct the law governing wrongful-death actions. *See Brown v. Pine Bluff Nursing Home*, 359 Ark. 471, 199 S.W.3d 45 (2004) (Hannah, J., concurring).

DANIELSON, J., joins.

*Anderson, Murphy & Hopkins, LLP*, by: *Julia M. Hancock* and *Mark D. Wankum*;
*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Stuart P. Miller* and *Brian A. Pipkin*; and
*Wright, Lindsey & Jennings, LLP*, by: *Jerry J. Sallings* and *Gary D. Marts, Jr.*, for appellants.

*Wilkes & McHugh, P.A.*, by: *Jeff R. Priebe* and *Deborah Truby Riordan*, for appellee.